[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO STRIKE
On November 19, 2001, the plaintiffs, Mark and Dina Misurale, individually and on behalf of their infant daughter, Vanessa Misurale, filed a five-count amended revised complaint against the defendants, Joseph Cuteri (Cuteri), a physician specializing in obstetrics, gynecology and maternal fetal medicine, and Bridgeport Hospital.[1]
This action arises out of injuries the plaintiffs allegedly sustained as a result of the defendants' negligence during the course of pregnancy, labor and delivery of the infant plaintiff.
In counts one and two, which are brought on behalf of the infant plaintiff, the plaintiffs allege that Cuteri and Bridgeport Hospital, respectively, were careless and negligent in their treatment, diagnosis, monitoring and supervision of the infant plaintiff and her mother during pregnancy, labor and delivery. As a result of this alleged deviation from the standard of care, the infant plaintiff purportedly suffered severe and permanent injuries.[2]
In count three, the plaintiffs allege that, as a result of the carelessness and negligence of the defendants, the infant plaintiff's mother, Dina Misurale, suffered and continues to suffer severe emotional distress.
The plaintiffs allege in count four that the infant plaintiff's father, Mark Misurale, who was present throughout the labor and delivery of his daughter, suffered and will continue to suffer extreme emotional distress as a result of his contemporaneous observation of the alleged negligence and the resultant injuries suffered by his daughter, and that the defendants knew or should have known that their conduct was likely to cause such emotional harm.
In count five, the plaintiff parents allege that, because of the defendants' negligence, they have incurred, and will continue to incur, expenses for medical care and treatment, hospitalization, special CT Page 3502 education, habilitation and rehabilitation of the infant plaintiff.
On January 14, 2002, Cuteri filed a motion to strike counts three and four of the amended revised complaint, accompanied by a memorandum in support. On March 11, 2002, the plaintiffs filed a memorandum in opposition.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). "[I]n determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245,260, 765 A.2d 505 (2001). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy ofopinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Faulkner v. United Technologies Corp., supra, 588. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Id., 580. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Gazo v. Stamford, supra, 260.
Despite Cuteri's confusion as to what legal theory the plaintiffs promulgate in count four, it is apparent from the face of this count, particularly the plaintiffs' conspicuous employment of the phrase "contemporaneous observation," that the plaintiffs assert a claim for bystander emotional distress. Within this context, Cuteri argues, citingMaloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988), that Connecticut does not recognize bystander emotional distress as a cause of action in the medical malpractice context. The plaintiffs counter that Maloney is inapplicable to the present factual scenario, and that Clohessy v.Bachelor, 237 Conn. 31, 675 A.2d 852 (1996), in which the Supreme Court recognized the viability of claims for bystander emotional distress, is the controlling authority.
The plaintiffs do not dispute the continuing validity of the Supreme Court's decision in Maloney, but, rather, the breadth of its holding. Specifically, the plaintiffs contend that the holding in Maloney is circumscribed by the particular facts of that case, i.e., a prolonged course of medical malpractice, lacking a readily discernible event, and that so long as a plaintiff sufficiently alleges the four factors set CT Page 3503 forth in Clohessy, a claim for bystander emotional distress is recognized in a medical malpractice action.
In Maloney v. Conroy, supra, 208 Conn. 394, the plaintiff sought damages for severe emotional distress she allegedly suffered as a result of the defendants' negligence in the care and treatment of the plaintiff's deceased mother. The court rejected unequivocally the plaintiff's claim, stating that "a bystander to medical malpractice may not recover for emotional distress . . ." Id., 393. In doing so, the court laced its decision with policy considerations: "To allow recovery by one . . . who has been more or less constantly `at the bedside' of the malpractice victim during the period of treatment is likely to cause hospitals and other medical treatment facilities to curtail substantially the extent of visitation of patients that is presently permitted . . . The restriction of current liberal practices with respect to patient visitation in order to reduce the incidence of bystander emotional disturbance claims would be a regrettable social consequence of enlarging the right to recover for emotional disturbances based upon the impact of medical malpractice upon bystanders." Id. 402-03.
The Supreme Court more recently addressed the issue of bystander emotional distress in Clohessy v. Bachelor, supra, 237 Conn. 31, albeit not in the medical malpractice context. In that case, the plaintiff mother and the plaintiff brother sought damages for emotional injuries they allegedly suffered as a result of the emotional shock of witnessing the defendant's automobile negligently strike and kill Brendan Clohessy.Id., 32-33. Believing that "the time [was] ripe to recognize a cause of action for bystander emotional distress"; id., 46; the Supreme Court adopted a "reasonable foreseeability" rule and set forth a four prong test for the recognition of a cause of action for bystander emotional distress.[3] Id., 47.
The Superior Court has thus been presented with the following dilemma: "On the one hand, Clohessy appears to articulate a universal test for a claim of bystander emotional distress. On the other hand, in Maloney v.Conroy, supra, 208 Conn. 393, the Supreme Court handed down a clear, bright line holding that a bystander to medical malpractice may not recover for emotional distress . . ." (Internal quotation marks omitted.)Wildman v. Connecticut Allergy Asthma Associates, P.C., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334473 (December 16, 1996, Levin, J.) (18 Conn.L.Rptr. 453, 454). Although "[i]t is axiomatic that a trial court is bound by Supreme Court precedent";Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 195, 676 A.2d 831
(1996); there is considerable debate as to which precedent the Superior Court is bound in medical malpractice actions. CT Page 3504
The Superior Court is split as to the issue of whether a claim for bystander emotional distress is legally sufficient in a medical malpractice action, with the majority of decisions recognizing the continuing validity of Maloney's preclusion of such claims. See, e.g.,Guarino v. Huttler, Superior Court, judicial district of New Haven, Docket No. CV 01 01456624 (August 23, 2002, Booth, J.) ("[T]he court is persuaded that the rule in Maloney, precluding bystander emotional distress claims arising out of medical malpractice, survives Clohessy");Rodrigues v. Danbury Hospital, Superior Court, judicial district of Danbury, Docket No. CV 01 0343892 (August 13, 2002, White, J.) ("This court agrees with the well-reasoned decisions of the first line of cases and holds that the Maloney bright-line rule precluding bystander emotional distress claims in medical malpractice actions in Connecticut is still intact"); Wildman v. Connecticut Allergy AsthmaAssociates, P.C., supra, 18 Conn.L.Rptr. 456 ("Since Maloney has not been overruled, the plaintiff may not assert a claim for bystander emotional distress arising out of alleged acts of medical malpractice . . ."); but see, e.g., Turner v. Obstetrics Gynecology Associates of Stamford,P.C., Superior Court, judicial district of Stamford, Docket No. CV 98 0169616 (September 6, 2001, D'Andrea, J.T.R.).
This court has already addressed and denied the legal sufficiency of bystander emotional distress claims in medical malpractice actions. SeeBaranowski v. St. Mary's Hospital, Superior Court, judicial district of Waterbury, Docket No. CV 98 0148905 (February 20, 2001, Doherty, J.) ("Maloney precludes recovery for bystander distress in medical malpractice actions, and that rule has not been modified by Clohessy"). Having carefully considered the reasoning in Baranowski, the court finds no justification to alter its conclusion. For that reason defendant Cuteri's motion to strike count four is hereby granted.
Cuteri moves to strike count three on the two grounds; the first ground being that the plaintiffs fail to allege sufficiently a cause of action for negligent infliction of emotional distress, in that they do not allege that he should have realized that his conduct involved an unreasonable risk of causing emotional distress. In the alternative, the defendant proposes a second ground, that being the argument that Connecticut does not recognize a claim for bystander emotional distress in the medical malpractice context.
The plaintiffs counter that their claim is premised upon a duty owed directly to a delivering mother by those providing her care. The plaintiffs argue that this duty is created by the physician-patient relationship, and that Connecticut courts have recognized claims for CT Page 3505 emotional distress where there is an independent basis for finding the existence of a direct duty.
Let it first be noted that this court recognizes "a distinction . . . between claims for bystander recovery and claims for negligent infliction of emotional distress based on the breach of a direct duty owed to a plaintiff/mother stemming from the physician-patient relationship."O'Sullivan v. Hofrichter, Superior Court, judicial district of Hartford, Docket No. CV 99 0591602 (June 21, 2000, Mulcahy, J.). "Numerous Superior Court cases have considered whether a mother may recover emotional distress damages for the injury or death of a child resulting from medical malpractice in the prenatal and delivery periods . . . The majority of the Superior Court cases that have considered the issue have ruled that a mother is not a bystander [with respect to matters] that are incident to prenatal care and the delivery of her child." (Internal quotation marks omitted.) Subiono v. Yordan, Superior Court, judicial district of New London, Docket No. CV 01 0559573 (April 25, 2002, Martin, J.); but see Drown v. Associated Women's Health, Superior Court, judicial district of Waterbury, Docket No. CV 00 0159512 (December 24, 2002, Jenkins Pittman, J.) (33 Conn.L.Rptr. 562). "[A] woman in labor is a participant rather than a bystander of that event, permitting the mother a direct claim for emotional distress." (Internal quotation marks omitted.) Johnson v. Day Kimball Hospital, Superior Court, judicial district of Windham at Putnam, Docket No. 063592 (January 24, 2001, Foley, J.). "In such circumstance . . . there are two within the zone of danger and the doctor owes a duty to each." (Internal quotation marks omitted.) Hyland v. State of Connecticut, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 91 0398956 (August 6, 1992, Aurigemma, J.) (7 Conn.L.Rptr. 222, 223). "[T]o characterize a mother as a bystander at the birth of her child is most troublesome and seems repugnant to logic." (Internal quotation marks omitted.) Smith v. Humes, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 95 0143884 (July 22, 1997, Ryan, J.). "The very term `delivery' presupposes that the mother is an active participant in the birthing of a child. To hold otherwise would be to reject the entire human experience, everywhere and at all times."Manville v. Williams, Superior Court, judicial district of Tolland at Rockville, Docket No. CV 97 065055 (April 8, 1998, Sullivan, J.) (21 Conn.L.Rptr. 654, 656). This court is persuaded by the majority view that a mother giving birth may assert a claim for negligent infliction of emotional distress based upon the harm she suffers as a result of the medical malpractice during the delivery of her child.
It is readily apparent that the plaintiff mother does not seek to sustain her claim based upon a theory of bystander emotional distress, CT Page 3506 but, rather, as a direct victim of negligent infliction of emotional distress. "[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that [his] conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.)Scanlon v. Connecticut Light Power Co., 258 Conn. 436, 446,782 A.2d 87 (2001).
That court went on to note, "this condition differs from the standard foreseeability of the risk of harm requirement for negligence liability generally in that it focuses more precisely on the nature of the harm to be anticipated as a prerequisite to recovery even [when] a breach of duty might otherwise be found . . ." Maloney v. Conroy, supra, 398, as cited in Scanlon, supra, 447.
In count three, the plaintiffs allege that because of the defendants' carelessness and negligence, Dina Misurale "suffered and continues to suffer and for a long time to come, will suffer from severe psychologic, physiologic and emotional distress," and that "the conditions prescribed . . . are painful, serious and permanent in their nature and in their effects and have impaired the plaintiff's ability to carry on and enjoy life's activities." The plaintiffs do not, however, allege anywhere in count three that Cuteri knew or should have known that his conduct was likely to cause the infant's mother emotional distress. Having failed to make this basic allegation, the plaintiffs cannot succeed on a claim for negligent infliction of emotional distress. For that reason the defendant Cuteri's motion to strike count three is hereby granted.
 By the Court Joseph W. Doherty, Judge