ROBINSON, J.
**729 The defendant, Stephen J. Leonetti, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, MacDermid, Inc., on its *617 claim of unjust enrichment.[1] On appeal, the defendant contends the following: (1) the plaintiff's unjust enrichment claim is barred by collateral estoppel on the basis of the proceedings underlying our decision in Leonetti v. MacDermid, Inc. , 310 Conn. 195, 76 A.3d 168 (2013) ; (2) the plaintiff's recovery is precluded by General Statutes §§ 31-290[2] and 31-296 (a),[3] the terms **730 of a termination agreement (agreement) between the parties, and public policy; (3) the trial court's jury instructions were improper; and (4) the trial court improperly excluded certain evidence. The plaintiff disagrees and claims that many of the defendant's arguments are unpreserved, inadequately briefed, or both. We agree with the plaintiff. Accordingly, we affirm the judgment of the trial court.
The record, including our decision in Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 195, 76 A.3d 168, reveals the following facts and procedural history. "The [defendant] worked for the [plaintiff] for twenty-eight years until he was discharged in early November, 2009. Five years earlier, in June, 2004, the [defendant] sustained a lower back injury during the course of his employment. The [defendant] timely filed notice of a workers' compensation claim related to this injury on April 14, 2005. The parties stipulated to the [Workers' Compensation Commissioner (commissioner) ] that the injury suffered by the [defendant] was a compensable injury.
"At the time that the [plaintiff] informed the [defendant] that he would be discharged from his employment, the [plaintiff] presented the [defendant] with a proposed ... agreement." Id., at 199, 76 A.3d 168. Under the terms of the agreement, the defendant's purpose in entering into the agreement was to provide "a binding agreement and understanding" with the plaintiff. As such, the agreement provided that the parties desired "to make the proposed transition as amiable and [trouble *618 free] **731 as possible ...." "Article II of the agreement signed by the parties provides that the [defendant] agreed to release the [plaintiff] from the following: 'any and all suits, claims, costs, demands, attorney's fees, damages, back pay, front pay, interest, special damages, general damages, workers' compensation claims, punitive damages, liabilities, actions, administrative proceedings, expenses, accidents, injuries and any other cause of action in law or equity that [the defendant] has or may have or might in any manner acquire which arise out of, relate to, or is in connection with his ... employment with, relationship with or business dealings with [the plaintiff] or the termination of that employment, relationship or dealings, or any other act, occurrence or omission, known or unknown, which occurred or failed to occur on or before the date this [a]greement is executed.'
"Article III of the agreement provides that, in consideration 'for the agreements and covenants made herein, the release given, the actions taken or contemplated to be taken, or to be refrained from,' the [defendant] would be paid twenty-seven weeks 'severance pay, determined solely upon the [defendant's] current base salary,' which amounted to $70,228.51, within thirty days of the [plaintiff's] receipt of the properly executed agreement; the [defendant] would continue to earn paid time off through his final day of employment; the [defendant] would be able to continue to obtain medical and dental benefits for up to eighteen consecutive months from his last date of employment under the Consolidated Omnibus Budget Reconciliation Act of 1985; 29 U.S.C. §§ 1161 through 1168 [2006] ; and the [defendant] had the option to convert group life insurance to individual life insurance within thirty days of his last day of employment.
"Article III of the agreement also provided that '[the defendant] understands that the payments and benefits **732 listed above are all that [the defendant] is entitled to receive from [the plaintiff].... [The defendant] agrees that the payments and benefits above are more than [the plaintiff] is required to pay under its normal policies, procedures and plans.' ...
"Article IV of the agreement also required the [defendant] to enter into a one year noncompete agreement and also contained a clause stating in part that '[the defendant] acknowledges that he has been given a reasonable period of time of at least thirty ... days to review and consider this [a]greement before signing it. [The defendant] is encouraged to consult his or her attorney prior to signing this [a]greement.' " (Emphasis in original.) Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 199-201, 76 A.3d 168.
Article V (b) of the agreement, entitled "[i]nvalid [c]lauses," provides: "It is understood and agreed that if any terms or provisions of this [a]greement shall contravene or be invalid under the laws of the United States, such contravention or invalidity shall not invalidate the whole [a]greement, but it shall be construed and enforced as to most nearly give effect to the intentions of the parties as expressed herein as possible."
"The [defendant] did not want to release his preexisting workers' compensation claim relating to the 2004 injury by signing the agreement. He consulted with his attorney, who contacted the [plaintiff's] counsel and requested that the [plaintiff] remove from the agreement the language that could operate to release the [defendant's] workers' compensation claim. The [plaintiff] refused to modify the language of the agreement. The [defendant's] counsel wrote a letter to the [plaintiff's] counsel asserting that the release language of article *619 II of the agreement 'really has no effect without the [c]ommissioner's approval' and scheduled an informal hearing before a workers' compensation commissioner **733 for January 8, 2010. The [plaintiff's] counsel did not attend the informal hearing, although a representative of Liberty Mutual Insurance Group, which administered the claim on behalf of the [plaintiff], did attend. Nothing was resolved on January 8, and, on January 27, 2010, the hearing was rescheduled for March 1, 2010.
"On January 26, 2010, the [plaintiff] sent the [defendant] a letter stating that, unless the [defendant] signed the unmodified agreement within the next ten days, it would withdraw its offer of $70,228.51 in severance pay. The [defendant] signed the agreement on February 2, 2010, and the commissioner found that the [defendant] did so because he did not wish to forfeit his severance pay. After the [plaintiff] received the signed agreement from the [defendant], it paid the [defendant] the $70,228.51. At that time, the commissioner had not approved the agreement as a 'voluntary agreement' or stipulation as defined in § 31-296.
"A formal hearing was held several months later to determine the enforceability of the language in article II of the agreement that dealt with the release of the [defendant's] workers' compensation claim. Specifically, the parties asked the commissioner to determine as follows: (1) '[w]hether a signed termination agreement between [an] employer and [an] employee can effectively waive the parties' rights and obligations set forth in the [Workers' Compensation Act (act), General Statutes § 31-275 et seq., in the absence of] approval of the agreement by a [commissioner]'; and (2) '[i]f the ... agreement does not waive the parties' rights and obligations set forth in the [act]-whether the [c]ommissioner would issue an order that the ... agreement be entered as a full and final stipulation of the [defendant's] workers' compensation claim against the [plaintiff].'
"The commissioner first found that, without approval by a commissioner, the agreement did not effectively **734 waive the parties' rights and obligations under the act. Next, the commissioner found that the agreement should not be approved as a full and final stipulation of the [defendant's] workers' compensation claim. In making this determination, the commissioner credited the [defendant's] testimony that 'the [agreement] and payment of $70,228.51 was based on the number of years [the defendant] worked for the [plaintiff] and there was no money paid in this agreement for [the defendant's] workers' compensation claim.' As a result, the commissioner found that the [plaintiff] had paid no consideration to the [defendant] for his accepted workers' compensation claim. In light of these findings, the commissioner found that the Workers' Compensation Commission (commission) retained jurisdiction over the [defendant's] 2004 injury and scheduled a further hearing on the [defendant's] assertion that the injury has rendered a 10 percent permanent partial disability rating to the [defendant's] lumbar spine." Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 201-203, 76 A.3d 168. The plaintiff appealed from the commissioner's decision to the Workers' Compensation Review Board (board), which affirmed the commissioner's decision. Id., at 203, 76 A.3d 168. Thereafter, the plaintiff appealed from the decision of the board. Id., at 199, 76 A.3d 168. We then transferred that appeal to this court. Id.
On appeal, this court concluded that, under § 31-296, a contractual release of a workers' compensation claim is unenforceable until it has been approved by the commissioner. Id., at 207, 76 A.3d 168. We *620 then upheld the board's decision affirming the commissioner's refusal to approve the release as a full and final settlement of the defendant's workers' compensation claim in light of its finding that the defendant had not intended to release his compensation claim by signing the agreement. Id., at 208, 76 A.3d 168. Importantly, we went on to explain that the commission "is not competent to rule on the rights and obligations of **735 the parties to a contract when those rights and obligations do not involve the issues that the legislature has authorized the commission to consider." Id., at 220, 76 A.3d 168. Thus, we noted that "[t]he enforceability of the remainder of the agreement is not a question for the workers' compensation forum.... Of course , [the plaintiff ] retains the right to seek whatever civil recourses it deems appropriate with respect to the remainder of the agreement, a matter about which we express no opinion ." (Emphasis added.) Id., at 221, 76 A.3d 168.
On November 30, 2011, while the workers' compensation matter was still pending on appeal, the plaintiff commenced the present action against the defendant, asserting claims of civil theft, fraud, unjust enrichment, conversion, and seeking rescission of the agreement.[4] Specifically, the plaintiff claimed that its promise to pay the defendant under the agreement was rendered unenforceable by the defendant's conduct, false promises, and misrepresentations. The defendant denied the plaintiff's allegations and asserted certain special defenses, including res judicata or collateral estoppel, on the basis of the proceedings underlying this court's decision in Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 195, 76 A.3d 168. The defendant also claimed that enforcement of the worker's compensation release provisions in the agreement would render the contract illegal under §§ 31-290 and 31-296.[5] The plaintiff denied the special defenses.
**736 The matter was tried to a jury, and, after the close of the plaintiff's evidence, the defendant moved for a directed verdict. The trial court reserved decision on that motion. Both parties filed preliminary requests to charge the jury, which were later supplemented. See part III of this opinion. Thereafter, the defendant took exception to the trial court's jury charge, claiming various errors in the charge given as well as the trial court's failure to instruct the jury in accordance with the defendant's request to charge.
On February 26, 2016, the jury returned a verdict in favor of the plaintiff on the *621 claim of unjust enrichment, awarding $70,228.51 in damages, and in favor of the defendant on the remaining counts of the complaint. Thereafter, on March 7, 2016, the defendant filed a motion for judgment notwithstanding the verdict and a motion to set aside the verdict as to unjust enrichment. The trial court denied the defendant's motions in a memorandum of decision dated April 22, 2016, and rendered judgment in accordance with the jury's verdict. The trial court also awarded the plaintiff interest in accordance with a previous offer of compromise in the amount of $24,689.65 and attorney's fees of $350. This appeal followed. See footnote 1 of this opinion. Additional relevant facts will be set forth as necessary.
On appeal, the defendant contends that (1) the plaintiff's unjust enrichment claim is barred by collateral estoppel on the basis of the proceedings underlying this court's decision in **737 Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 195, 76 A.3d 168, (2) the plaintiff's recovery is precluded by §§ 31-290 and 31-296, the terms of the agreement, and public policy, (3) the trial court's jury instructions were improper, and (4) the trial court improperly excluded certain evidence. We address each of these claims in turn.
I
We first address the question of whether the plaintiff's unjust enrichment claim is barred by the doctrine of collateral estoppel.[6] The defendant argues that the material facts underlying Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 195, 76 A.3d 168, are the same as those at issue in the present case. Specifically, the defendant contends that it has already been finally determined that the agreement's workers' compensation release, upon which, the defendant argues, the plaintiff's claim is based, is unenforceable, and, therefore, his agreement to release his claim was not binding on him and cannot legally constitute a pretense or a promise. As such, the defendant further contends that Leonetti served as a final judicial determination that the agreement was neither enforceable nor effective with respect to the release of the defendant's workers' compensation claim. The defendant argues, therefore, that the principles **738 of collateral estoppel barred the plaintiff from relitigating that same issue in the present case.
In response, the plaintiff argues, inter alia, that the defendant's collateral estoppel claim is meritless because he fails to identify any element of the plaintiff's unjust enrichment claim that was actually litigated and previously decided.[7] The *622 plaintiff also argues that the defendant's claim "stem[s] from the false premise that [the plaintiff's] unjust enrichment claim is an attempt to enforce the unenforceable workers' compensation release." We agree with the plaintiff and conclude that the doctrine of collateral estoppel does not bar the plaintiff's recovery for unjust enrichment.
We begin by setting forth the applicable standard of review. The defendant's claim requires us to determine whether the doctrine of collateral estoppel precludes **739 the plaintiff's unjust enrichment claim. This presents a question of law over which our review is plenary. Lighthouse Landings, Inc. v. Connecticut Light & Power Co. , 300 Conn. 325, 345, 15 A.3d 601 (2011).
The fundamental principles underlying the doctrine of collateral estoppel are well established. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality.... Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim.... For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment....
"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.... An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.... If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; emphasis in original; internal quotation marks omitted.) Lyon v. Jones , 291 Conn. 384, 406, 968 A.2d 416 (2009). "Before collateral estoppel applies [however] there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Emphasis in original; internal quotation marks omitted.) Corcoran v. Dept. of Social Services , 271 Conn. 679, 689, 859 A.2d 533 (2004). In other words, *623 "collateral estoppel has **740 no application in the absence of an identical issue." Gladysz v. Planning & Zoning Commission , 256 Conn. 249, 261, 773 A.2d 300 (2001). Further, "an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel." Wiacek Farms, LLC v. Shelton , 132 Conn. App. 163, 172, 30 A.3d 27 (2011), cert. denied, 303 Conn. 918, 34 A.3d 394 (2012) ; see also Corcoran v. Dept. of Social Services , supra, at 691, 859 A.2d 533 (acknowledging that there was overlap of issues but declining to apply collateral estoppel because issues were not identical).
We conclude that there is not a sufficient identity of issues between the present case and Leonetti v. MacDermid, Inc. , supra, 310 Conn. at 195, 76 A.3d 168, to establish that the plaintiff's recovery is barred by collateral estoppel. A successful claim of unjust enrichment requires proof that (1) the defendant received a benefit, (2) the defendant did not perform in exchange for that benefit, and (3) the failure to perform operated to the detriment of the plaintiff. Gagne v. Vaccaro , 255 Conn. 390, 409, 766 A.2d 416 (2001). These issues were not considered in Leonetti . In Leonetti , this court identified the principal issue as "whether the [board] properly affirmed the commissioner's refusal to approve as a valid 'stipulation' [the agreement] between [the plaintiff] and [the defendant]." Leonetti v. MacDermid, Inc. , supra, at 198, 76 A.3d 168. We concluded that, under the act, the agreement's release of the defendant's workers' compensation claim was unenforceable "unless and until the commissioner approved the agreement." Id., at 207, 76 A.3d 168. In Leonetti , we noted that the commission's subject matter jurisdiction was limited to whether to approve the agreement as a release of the defendant's workers' compensation claim; as such, we explained that "[t]he enforceability of the remainder of the agreement is not a question for the workers' compensation forum ...."[8] Id., at 221, 76 A.3d 168.
**741 Thus, we concluded that any consideration of the defendant's "allegedly deceitful" conduct in entering into the agreement was properly left to another forum. Id., at 215-16, 76 A.3d 168. Specifically, we explained that, "once the commissioner determined that the $70,228.51 was not paid to the [defendant] in exchange for his release of his workers' compensation claim, the actions engaged in by the [defendant] warranted no further consideration in the workers' compensation forum." Id., at 220, 76 A.3d 168. Importantly, we noted that the plaintiff "retains the right to seek whatever civil recourses it deems appropriate with respect to the remainder of the agreement, a matter about which we express no opinion ." (Emphasis added.) Id., at 221, 76 A.3d 168. The plaintiff now seeks to have this "deceitful" conduct adjudicated in the context of the present unjust enrichment action, an issue that cannot be deemed barred by collateral estoppel given that Leonetti expressly did not address that issue.
The defendant, however, asserts that the plaintiff's claim of unjust enrichment is predicated on the defendant's "alleged[ly] deceptive conduct" and "[t]he only deceit that the [p]laintiff alleged was [the] [d]efendant's *624 misrepresentation in the [a]greement that he would release his workers' compensation claim." We disagree. The plaintiff's claims do not depend on the enforceability of the release of workers' compensation claims contained in the agreement. It is undisputed that the defendant was allowed to pursue his workers' compensation claim and that the payment of $70,228.51 was not a workers' compensation benefit. Id., at 203, 76 A.3d 168. Rather, the plaintiff's unjust enrichment claim is based on the parties' actions as they relate to the remainder of the **742 agreement. Specifically, the plaintiff points to several instances of the defendant's conduct, apart from the unenforceable release, that form the basis of its claim. For example, the plaintiff notes that the defendant acted contrary to the purpose of the agreement, which was "to make the proposed transition as amiable and trouble-free as possible ...." The plaintiff also notes that the defendant breached article IV (d) of the agreement, which provided that he had received a "reasonable period of time" to review the agreement prior to signing it, by arguing to the contrary before the commission. Most importantly, the plaintiff contends that the defendant breached article III of the agreement that provided that the defendant understood that "the payments ... are all that [the defendant] is entitled to receive from [the plaintiff].... [The defendant] agrees that the payments ... are more than [the plaintiff] is required to pay under its normal policies, procedures and plans."[9] (Emphasis altered.) Accordingly, the prior proceedings in Leonetti did not resolve identical issues, and, as such, the plaintiff's recovery under its unjust enrichment claim is not barred by the doctrine of collateral estoppel.
II
We next turn to the defendant's claims that the plaintiff's recovery is barred by §§ 31-290 and 31-296, by the terms of the agreement, and by public policy and that, as such, the plaintiff cannot prevail on its unjust enrichment claim as a matter of law.
The record reveals the following additional facts and procedural history that are relevant to our resolution of these claims. On February 18, 2016, after the close **743 of the plaintiff's evidence, the defendant filed a motion seeking a directed verdict. With respect to the plaintiff's unjust enrichment claim, this motion centered on the fact that the defendant had "received no consideration in exchange for the workers' compensation release." The defendant referenced his supplemental request to charge number forty-two, which stated that, "[b]ecause [the plaintiff] did not pay [the defendant] any consideration ... in exchange for releasing his workers' compensation claim, the workers' compensation release ... failed to comply with the requirements of Connecticut law ...." The trial court reserved decision on that motion. Thereafter, on March 7, 2016, the defendant filed a motion for judgment notwithstanding the verdict and a motion to set aside the verdict as to the claim of unjust enrichment. Both of those motions asserted that the plaintiff's recovery for unjust enrichment "would violate the public policy embodied in [the act], including but not limited to the provisions of [ §§ 31-290 and 31-296 ]." The trial court denied the defendant's motions on April 22, 2016. *625 On appeal, the defendant claims that § 31-296 provides that a voluntary agreement between an employer and an injured employee must be reviewed by the commissioner to ascertain whether it conforms with the provisions of the act. Accordingly, the defendant claims that, because § 31-290 prohibits contracts from relieving employers of "any obligation created by [the act]," the plaintiff is improperly attempting to circumvent the approval requirement of § 31-296 by "couching its claim as one based upon unjust enrichment/implied contract ...." The defendant also argues that article V (b) of the agreement provides that, if the defendant's release of his workers' compensation claim was found to be invalid, the remainder of the agreement would still be enforced. According to the defendant, this, in turn, would bar the plaintiff from recovering under a theory **744 of unjust enrichment, or a contract implied in law, because an express contract between the parties fore-closes the possibility of recovery under an implied-in-law contract. Finally, the defendant claims that the agreement violates public policy and is, therefore, unenforceable.[10] In response, the plaintiff argues, inter alia, that the defendant did not adequately preserve these claims. We agree with the plaintiff and conclude that the defendant failed to adequately preserve these claims in his motion for a directed verdict.
Whether the evidence presented by the plaintiff is sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. Curran v. Kroll , 303 Conn. 845, 855, 37 A.3d 700 (2012). "Directed verdicts are not favored.... A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion.... In reviewing the trial court's decision [to deny a defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff.... A directed verdict is justified if ... the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) Bagley v. Adel Wiggins Group , 327 Conn. 89, 102, 171 A.3d 432 (2017) ; see also Gagne v. Vaccaro , supra, 255 Conn. at 400, 766 A.2d 416 (same standard applies to motions for judgment notwithstanding verdict).
A motion for a directed verdict serves to "adequately [alert the opposing party] and the trial court to the **745 [relevant] legal issue[s] ...." Salaman v. Waterbury , 246 Conn. 298, 309, 717 A.2d 161 (1998). Specifically, "[a] motion for a directed verdict is a prerequisite to the filing of a motion to set aside the verdict.... [T]o permit the appellant first to raise posttrial an issue that arose during the course of the trial would circumvent the policy underlying the requirement of timely preservation of issues." (Citations omitted.) Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp. , 245 Conn. 1, 49, 717 A.2d 77 (1998). "[A] motion for judgment notwithstanding the verdict is not a new motion, but the renewal of a motion for a directed verdict." (Internal quotation marks omitted.) *626 Haynes v. Middletown , 314 Conn. 303, 312, 101 A.3d 249 (2014). Thus, such postverdict motions may not be predicated on a ground not previously raised in a motion for a directed verdict. Salaman v. Waterbury , supra, at 309, 717 A.2d 161 ; see also Practice Book § 16-37 ("a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict " [emphasis added] ).
In the present case, the defendant's motion for directed verdict, as to the unjust enrichment claim, was based solely on the ground that the defendant "received no consideration in exchange for the [w]orkers' [c]ompensation release." Although the defendant's motion for a directed verdict referenced his supplemental request to charge forty-two, which in turn mentions the requirements of Connecticut law generally , there is no mention of § 31-290, § 31-296, article V (b) of the agreement, or public policy. Moreover, the defendant also made no mention whatsoever of article V (b) of the agreement in his postverdict motions. The defendant did, however, assert that the plaintiff's recovery "would violate the public policy embedded in [ §§ 31-290 and 31-296 ]" in his motion for judgment notwithstanding **746 the verdict and motion to set aside the verdict. The defendant's attempt to preserve these statutory and public policy arguments by including them in his postverdict motions is unsuccessful because such motions may not be predicated on a ground not previously raised in a motion for a directed verdict.[11] See Salaman v. Waterbury , supra, 246 Conn. at 309, 717 A.2d 161. Thus, the defendant did not timely alert the plaintiff and the trial court to his public policy and statutory arguments and never alerted the trial court to his argument regarding article V (b) of the agreement. Accordingly, we conclude that defendant did not adequately preserve these claims for appeal.[12]
III
We next address the defendant's challenges to the trial court's jury instructions. The record reveals the following additional relevant facts and procedural history.
**747 The defendant filed a preliminary request to charge on November 6, 2015. Request thirty-six in that document sought an instruction *627 relating to the provisions of §§ 31-290 and 31-296. Thereafter, on February 16, 2016, the defendant filed a supplemental request to charge. Request forty-four in that document pertained to this court's holding in Leonetti . Specifically, it sought the following instruction: "In considering the claims raised by [the plaintiff] concerning its severance agreement, [the plaintiff] is free to seek recourse with respect to the provisions contained in its agreement, other than the workers' compensation release. In other words, you may consider [the plaintiff's] claims of fraud, theft, conversion and unjust enrichment only as they pertain to the remainder of the severance agreement." The trial court declined to provide the jury with those specific instructions.
On appeal, the defendant contends that the trial court improperly failed to instruct the jury in accordance with requests forty-four and thirty-six and that the court's unjust enrichment charge was not proper. Specifically, the defendant claims that, in refusing to charge the jury in accordance with request forty-four, the plaintiff was able to "pursue its claim of unjust enrichment based on the very clause that had previously been judged unenforceable under the act." With respect to request thirty-six, the defendant claims that, in failing to charge the jury on the provisions of §§ 31-290 and 31-296, the trial court "permitted the jury to rely upon the unenforceable promise contained in the [a]greement in order to find the defendant liable in derogation of the public policy" of the act. The defendant also contends that the trial court's instructions on unjust enrichment improperly permitted the jury to find in favor of the plaintiff in the absence of proof that any of the defendant's actions or omissions caused the plaintiff injury.
**748 In response, the plaintiff argues, inter alia, that the defendant failed to adequately brief the harmfulness of the alleged instructional errors. The plaintiff further argues that the trial court adequately instructed the jury on the legal principles of Leonetti and the provisions of §§ 31-290 and 31-296, and, as such, was under no obligation to charge the jury in the specific manner requested by the defendant. With respect to the trial court's instruction on unjust enrichment, the plaintiff argues, inter alia, that the defendant's claim is barred by the general verdict rule. We agree with the plaintiff and conclude that, with respect to requests forty-four and thirty-six, the defendant failed to adequately brief the harmfulness of the alleged instructional errors. We also conclude that the defendant's argument with respect to the trial court's unjust enrichment instructions is barred by the general verdict rule.
A
Requests Forty-Four and Thirty-Six
We begin our analysis of the defendant's claims with respect to requests forty-four and thirty-six by noting that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief.... Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly.... Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) Connecticut Light & Power Co. v. Gilmore , 289 Conn. 88, 124, 956 A.2d 1145 (2008). Moreover, without adequate briefing on the harmfulness of an alleged error, "the defendant is not entitled to review of [the] claim on the merits."
*628 **749 Saint Bernard School of Montville, Inc. v. Bank of America , 312 Conn. 811, 829, 95 A.3d 1063 (2014). Specifically, with respect to jury instructions, we have explained that "[i]t is axiomatic ... that not every error is harmful.... [W]e have often stated that before a party is entitled to a new trial ... he or she has the burden of demonstrating that the error was harmful.... An instructional impropriety is harmful if it is likely that it affected the verdict." (Citation omitted; internal quotation marks omitted.) Scanlon v. Connecticut Light & Power Co. , 258 Conn. 436, 448, 782 A.2d 87 (2001).
As the party challenging the jury instructions, the defendant was required to prove that the instructions likely affected the verdict. With respect to request forty-four, the defendant's harm analysis consists of only one sentence in which he claims that, had the trial court given his requested instruction, he "would have been entitled to judgment as a matter of law on the [f]ourth [c]ount of the amended complaint ...." As to request thirty-six, the defendant's harm analysis is similarly brief and asserts that the trial court's charge permitted the plaintiff to recover "in derogation of the protections afforded by the [a]ct" and misled the jury and caused injustice to him. Thus, the defendant's harm analyses consist of only cursory statements. In the absence of additional detail regarding the question of harm, we conclude that these claims of instructional error were inadequately briefed.[13]
**750 B
Unjust Enrichment Jury Instruction
Turning to the defendant's claim that the trial court improperly instructed the jury on the plaintiff's unjust enrichment cause of action, we note that "[u]nder the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party." (Internal quotation marks omitted.) Tetreault v. Eslick , 271 Conn. 466, 471, 857 A.2d 888 (2004). As such, the general verdict rule precludes an appeal claiming instructional error when the jury could have decided the case on a ground not implicated by the challenged instruction. See *629 Kalams v. Giacchetto , 268 Conn. 244, 251-52, 842 A.2d 1100 (2004) (declining to consider claim of instructional error under general verdict rule); see also Dowling v. Finley Associates, Inc. , 248 Conn. 364, 371, 727 A.2d 1245 (1999) (noting that "if any ground for the verdict is proper, the verdict must stand" and that "only if every ground is improper does the verdict fall" [internal quotation marks omitted] ). The purpose of the rule is based "on the policy of the conservation of judicial resources, at both the appellate and trial levels. On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from **751 the actual source of the jury verdict that is under appellate review.... In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant." (Internal quotation marks omitted.) Gajewski v. Pavelo , 229 Conn. 829, 836, 643 A.2d 1276 (1994).
"This court has held that the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Internal quotation marks omitted.) Kalams v. Giacchetto , supra, 268 Conn. at 255, 842 A.2d 1100.
In the present case, the defendant claims that the following unjust enrichment instruction by the trial court was improper: "When considering [the defendant's promise to release his workers' compensation claim] I instruct you, as a matter of law, that a promise includes within it a promise to do all that is necessary to carry the promise into effect." The third general verdict situation-separate legal theories of recovery pleaded in one count-is implicated in the present case, barring review of this claim. See Kalams v. Giacchetto , supra, 268 Conn. at 255, 842 A.2d 1100. The plaintiff's unjust enrichment claim not only relied on the defendant's intentions not to release his workers' compensation claim and to do all that was necessary to carry that into effect, but also on other misrepresentations contained in the agreement, such as the statements indicating the defendant believed that he had sufficient time to review the agreement and that $70,228.51 was more than he was **752 entitled to receive.[14] See Brown v. Bridgeport Police Dept. , 155 Conn. App. 61, 70, 107 A.3d 1013 (2015) (third situation was implicated because pleading "set forth distinct legal theories on which the jury could find [that] use of deadly force was statutorily authorized"); Thames River Recycling, Inc. v. Gallo , 50 Conn. App. 767, 782, 720 A.2d 242 (1998) (given that plaintiff had several theories of recovery supporting one count, case fell into third situation); cf. Staudinger v. Barrett , 208 Conn. 94, 99-100, 544 A.2d 164 (1988) (general verdict rule applied when "defendants' denial of negligence and their allegations of contributory negligence constitute[d] two discrete defenses, either of which could have supported the jury's general verdict"). The defendant did not request jury interrogatories that would properly establish *630 the ground on which the jury made its decision on the unjust enrichment count. As such, the defendant's claim of instructional error as to unjust enrichment is unreviewable under the general verdict rule.
IV
Finally, we address the defendant's evidentiary claims. The following additional facts are relevant to our resolution of these claims. In accordance with the court's trial management orders, the plaintiff moved to exclude, inter alia, all evidence and argument showing that the commissioner had imposed a $500 fine on the plaintiff as a result of its general counsel's refusal to attend a workers' compensation hearing, including exhibit I, which is the January 8, 2010 order from the commission imposing that fine. The defendant objected **753 to that motion and also opposed the plaintiff's objections to the introduction of defendant's exhibits C, D, and F through L, which were based on similar legal arguments.[15] The plaintiff also sought to exclude exhibit Z, which was an April 5, 2010 letter from the defendant's attorney. The defendant opposed that motion. After oral argument, the trial court issued a ruling excluding exhibit I and ruling that it would consider other evidentiary issues briefed in the motion during trial. The trial court ultimately excluded defendant's exhibits G, H, I, J, Z, and JJJ[16] on the basis of hearsay, the danger of unfair prejudice substantially outweighing probative value, and confusion of the issues.
On appeal, the defendant claims that the trial court improperly excluded his exhibits G, H, I, J, Z, and JJJ. The defendant contends that these exhibits revealed relevant communications between the parties and the state of mind of the defendant. Moreover, the defendant contends that, contrary to the plaintiff's objection at trial, exhibits G, H, I, J, Z, and JJJ did not constitute hearsay. Specifically, the defendant contends that exhibits G, J, Z, and JJJ did not constitute hearsay because they were not offered for the truth of the matters **754 asserted. In response, the plaintiff argues, inter alia, that the defendant's arguments with respect to exhibits G, H, I, J, and JJJ, are unreviewable because the defendant does not address all of the trial court's bases for excluding these exhibits. The plaintiff also argues that the defendant failed to adequately brief the harmfulness of the trial court's evidentiary rulings, and, as such, the defendant's claim with respect to exhibit Z may not be considered. We agree with the plaintiff, and conclude that, because the defendant did not challenge all of the bases under which the trial court excluded exhibits G, H, I, J, and JJJ, his claims on appeal related to those exhibits are moot. *631 With respect to exhibit Z, we further conclude that the defendant failed to adequately brief the harmfulness of the evidentiary ruling.
A
Exhibits G, H, I, J, and JJJ
We begin our analysis of the defendant's claims with respect to exhibits G, H, I, J, and JJJ by noting that "[m]ootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction ...." (Internal quotation marks omitted.) Lyon v. Jones , supra, 291 Conn. at 392, 968 A.2d 416. "The fundamental principles underpinning the mootness doctrine are well settled.... Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute ... (2) that the interests of the parties be adverse ... (3) that the matter in controversy be capable of being adjudicated by the judicial power ... and (4) that the determination of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation **755 marks omitted.) State v. Lester , 324 Conn. 519, 526, 153 A.3d 647 (2017). "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow .... In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citation omitted; emphasis in original; internal quotation marks omitted.) Lyon v. Jones , supra, at 394, 968 A.2d 416.
"Where an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims.... Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citation omitted; internal quotation marks omitted.) State v. Lester , supra, 324 Conn. at 526-27, 153 A.3d 647 ; see also Lyon v. Jones , supra, 291 Conn. at 395, 968 A.2d 416 ("even if we were to agree with the plaintiff on the issue that she does raise with respect to her ... claims, we still would not be able to provide her any relief in light of the binding adverse finding with respect to those claims" [emphasis in original] ).
In the present case, the trial court excluded exhibits G, H, J, and JJJ as both hearsay and because their probative value was substantially outweighed by the danger of unfair prejudice. The trial court excluded exhibit I because its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. On appeal, the defendant challenges the trial court's exclusion of these exhibits only on the limited basis of hearsay. Because there are independent bases for the trial court's exclusion of the evidence that the defendant has not challenged in the present appeal, **756 even if we were to hold that the trial court improperly excluded exhibits G, H, I, J, and JJJ on the basis of hearsay, we could grant no practical relief to the defendant. Accordingly, we conclude that the defendant's evidentiary claims pertaining to these exhibits are moot and that, therefore, this *632 court lacks subject matter jurisdiction to consider those claims.[17]
B
Exhibit Z
Turing to the defendant's claim with respect to exhibit Z, we set forth the applicable standard of review. "Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion.... The trial court has wide discretion in determining the relevancy of evidence ... and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) State v. Santos , 318 Conn. 412, 423, 121 A.3d 697 (2015). Moreover, "evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) Stokes v. Norwich Taxi, LLC , 289 Conn. 465, 489, 958 A.2d 1195 (2008).
"It is a fundamental rule of appellate review of evidentiary rulings that if [the] error is not of constitutional dimensions, an appellant has the burden of establishing **757 that there has been an erroneous ruling which was probably harmful to him ." (Emphasis added; internal quotation marks omitted.) State v. Gonzalez , 272 Conn. 515, 527, 864 A.2d 847 (2005). Thus, "[w]e do not reach the merits of [a] claim [where] the defendant has not briefed how he was harmed by the allegedly improper evidentiary ruling." State v. Baker , 168 Conn. App. 19, 35, 145 A.3d 955, cert. denied, 323 Conn. 932, 150 A.3d 232 (2016) ; see also Saint Bernard School of Montville, Inc. v. Bank of America , supra, 312 Conn. at 829, 95 A.3d 1063 (without adequate briefing of harmfulness of error, "the defendant is not entitled to review of [the] claim on the merits").
The only mention of the harmfulness of this evidentiary ruling in the defendant's brief consists of only broad statements and a conclusory assertion that the alleged errors "deprived [the] defendant of his opportunity to properly and fairly present his case to the jury and misled the jury ...." Nowhere does the defendant's brief explain how the verdict was likely affected by the trial court's particular exclusion of exhibit Z. Accordingly, because we conclude that the defendant failed to adequately brief the harmfulness of the trial court's evidentiary ruling, he is not entitled to review of his claim with respect to exhibit Z on the merits.
The appeal is dismissed with respect to the defendant's claims regarding exhibits G, H, I, J, and JJJ; the judgment is affirmed.
In this opinion the other justices concurred.

The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

General Statutes § 31-290 provides: "No contract, expressed or implied, no rule, regulation or other device shall in any manner relieve any employer, in whole or in part, of any obligation created by this chapter, except as herein set forth."

General Statutes § 31-296 (a) provides: "If an employer and an injured employee, or in case of fatal injury the employee's legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, the commissioner shall so approve it. A copy of the agreement, with a statement of the commissioner's approval, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. The commissioner's statement of approval shall also inform the employee or the employee's dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program administered by the Department of Rehabilitation Services under the provisions of this chapter. The commissioner shall retain the original agreement, with the commissioner's approval thereof, in the commissioner's office and, if an application is made to the superior court for an execution, the commissioner shall, upon the request of said court, file in the court a certified copy of the agreement and statement of approval."
We note that § 31-296 (a) has been amended since the events underlying the present appeal. See, e.g., Public Acts, Spec. Sess., June, 2012, No. 12-1, § 85. Those changes are not, however, relevant to the present appeal. For the sake of simplicity, we refer to the current revision of the statute.

The plaintiff subsequently amended its complaint on January 15, 2013, to include a sixth count, alleging that the defendant filed a fraudulent claim for workers' compensation benefits as defined in General Statutes § 31-290c. Given that the jury returned a verdict in favor of the defendant on this count and that this count is unrelated to the agreement, the defendant has not challenged it on appeal.

The defendant also filed a counterclaim, alleging that the plaintiff instituted the present action against him in retaliation for the exercise of his rights under the act. The trial court subsequently denied the plaintiff's motion to dismiss that counterclaim on the basis of absolute immunity. The plaintiff filed an interlocutory appeal, and, in MacDermid, Inc. v. Leonetti , 310 Conn. 616, 625-26, 79 A.3d 60 (2013), this court upheld the trial court's denial of the motion to dismiss, concluding that, "when an employer's interest in unfettered access to the courts is weighed against an employee's interest in exercising his rights under the act without fear of facing a baseless retaliatory civil action, the employee's interest prevails." In the proceedings that followed, the trial court rendered summary judgment in favor of the plaintiff on the defendant's counterclaim, concluding that it was premature. See MacDermid, Inc. v. Leonetti , 158 Conn. App. 176, 178, 118 A.3d 158 (2015) (upholding trial court's award of summary judgment on defendant's counterclaim). This counterclaim is not at issue in the present appeal.

Insofar as the defendant also argues that the plaintiff's unjust enrichment claim is barred by the doctrine of res judicata, we conclude that argument is inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief.... Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly.... Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned ." (Emphasis added; internal quotation marks omitted.) Connecticut Light & Power Co. v. Gilmore , 289 Conn. 88, 124, 956 A.2d 1145 (2008). Although the defendant claims that the plaintiff's recovery for unjust enrichment is "precluded pursuant to the doctrines of collateral estoppel and/or res judicata," the defendant provides no analysis of res judicata, instead analyzing only the issue of collateral estoppel.

The plaintiff also argues that an interlocutory appeal previously taken by the defendant bars this appeal on the issue of collateral estoppel. On April 21, 2014, the defendant filed an interlocutory appeal from the trial court's denial of his motion for summary judgment, which was based on a collateral estoppel argument. The plaintiff moved to dismiss the appeal asserting, inter alia, that the Appellate Court lacked subject matter jurisdiction because no final judgment had been rendered. The Appellate Court granted the plaintiff's motion to dismiss the defendant's appeal for lack of subject matter jurisdiction. Accordingly, the dismissal of that interlocutory appeal cannot serve as a bar to the present appeal because the Appellate Court did not render a final judgment on the merits of the defendant's collateral estoppel argument. Cf. Santorso v. Bristol Hospital , 308 Conn. 338, 351, 63 A.3d 940 (2013).
Additionally, the plaintiff argues that the defendant failed to adequately preserve his collateral estoppel defense at trial because the defendant's directed verdict and postverdict motions did not "mention 'collateral estoppel' at all." Although the defendant did not use the phrase "collateral estoppel" in his motions, the record reflects that he did assert the controlling effect of Leonetti in his motion for a directed verdict, his supplemental request to charge, and his posttrial motions. Thus, the defendant provided the trial court and the plaintiff with the basis of his collateral estoppel defense with sufficient clarity to put them on reasonable notice of this defense. Given that the "sine qua non of preservation is fair notice to the trial court," we conclude that the defendant adequately preserved this defense. State v. Jorge P. , 308 Conn. 740, 753, 66 A.3d 869 (2013).

We also note that no preclusive effect can attach when the prior tribunal lacked jurisdiction to consider the relevant issues. See Bender v. Bender , 292 Conn. 696, 716-17, 975 A.2d 636 (2009). As such, given that Leonetti expressly states that the commission's subject matter jurisdiction was limited to determining the enforceability of the workers' compensation release, that claim cannot have collateral estoppel effect on the plaintiff's recovery for unjust enrichment.

As the trial court noted, "[t]he jury reasonably could have concluded that [the defendant] was unjustly enriched [because, in the absence of] the agreement, [the plaintiff] had no obligation to pay any severance benefits, and [the defendant] had no right to receive them."

Specifically, the defendant contends that, in "Connecticut, there are strong public policy reasons for the oversight of releases by employees of workers' compensation claims." Thus, the defendant claims that, because the plaintiff failed to obtain approval of his workers' compensation claim release, the plaintiff cannot recover under a theory of unjust enrichment as a matter of law. Accordingly, the defendant asserts that the "appropriate remedy is the rendering of judgment for the defendant, notwithstanding the verdict for the plaintiff."

To the extent that the defendant raises additional challenges to the trial court's denial of his postverdict motions, we conclude that any such argument is inadequately briefed. The defendant's brief claims, on a single page, that the trial court "erred in denying the defendant's postverdict motions" and simply incorporates arguments he made throughout the rest of his brief with no analysis specific to his postverdict motions. See Connecticut Light & Power Co. v. Gilmore , 289 Conn. 88, 124, 956 A.2d 1145 (2008) ("[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief.... Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.] ).

We also note that the defendant's contention that the plaintiff's recovery for unjust enrichment violates §§ 31-290 and 31-296 and public policy is grounded on the incorrect presumption that the plaintiff's unjust enrichment claim is based solely on the unenforceable workers' compensation release. As discussed previously in this opinion, it is undisputed that the $70,228.51 payment was not a workers' compensation benefit; rather, it was a voluntary severance payment. Moreover, the defendant received full workers' compensation benefits. Thus, the plaintiff's recovery of the $70,228.51 severance payment does not affect the defendant's workers' compensation benefits and did not relieve the plaintiff of its obligations under the act. Accordingly, restitution in this case does not defeat the purpose of the act and, as such, does not violate public policy.

While we are not required to reach the merits of the defendant's argument with respect to requests forty-four and thirty-six, we note that the substance of the defendant's arguments are unpersuasive because, contrary to the defendant's contentions, the trial court adequately instructed the jury regarding this court's holding in Leonetti and the provisions of §§ 31-290 and 31-296. "When reviewing [a] challenged jury instruction ... we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts.... [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law.... As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury ... we will not view the instructions as improper.... We do not critically dissect a jury instruction." (Citation omitted; internal quotation marks omitted.) Ancheff v. Hartford Hospital , 260 Conn. 785, 811, 799 A.2d 1067 (2002). Additionally, while "[a] request to charge [that] is relevant to the issues of [a] case and [that] is an accurate statement of the law must be given ... [i]nstructions to the jury need not be in the precise language of a request." (Citation omitted; internal quotation marks omitted.) Scanlon v. Connecticut Light & Power Co. , supra, 258 Conn. at 445-46, 782 A.2d 87. Thus, the trial court was under no obligation to fashion its own charge using the specific language contained in requests forty-four and thirty-six.

The defendant similarly claims that the trial court improperly instructed the jury that it should not consider whether the defendant's promises were unenforceable and that, "[because] the [commission] did not approve the [agreement], you may find that [the defendant] would be unjustly enriched by retaining the benefits of that agreement." These claims are also barred by the general verdict rule for the same reason.

Exhibits C, F, and G are various letters from the defendant's attorney to the plaintiff's attorney regarding the workers' compensation release contained in the agreement. Exhibit D is a December 22, 2009 letter from the defendant's attorney to the plaintiff's attorney containing a copy of a notice for an informal hearing before the commission on January 8, 2010. Exhibit H is an affidavit from the attorney that represented the plaintiff before the commission in support of its motion to quash and motion for a protective order. Exhibit J is a January 19, 2010 letter from the plaintiff's former attorney advising the commission that he no longer represented the plaintiff. Exhibit K is a copy of a notification of appearance dated January 27, 2010. Exhibit L is copy of a notice for an informal hearing before the commission on March 1, 2010.

Exhibit JJJ is a version of exhibit G, a letter from the defendant's attorney to the plaintiff's attorney, created by the defense during trial. The trial court excluded it on the same grounds as exhibit G-namely, hearsay, its probative value was substantially outweighed by the danger of unfair prejudice, and confusion of the issues.

We also note that, during oral argument before this court, the defendant appears to have conceded this point by acknowledging that he failed to challenge all of the bases on which the trial court excluded these exhibits. Specifically, in response to the assertion that there were alternative grounds for the exclusion of these exhibits, the defendant stated: "I would concede, Your Honor, that we briefed the question of admissibility on the basis of hearsay .... We'll continue to rely on the brief."