******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN GLEASON *v.* MARCELLA DURDEN ET AL.
(AC 43738)

Bright, C. J., and Prescott and Alexander, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, his siblings, M, H and C, and his brother-in-law A, for, inter alia, unjust enrichment and breach of contract. The plaintiff alleged that the parties entered into a family cooperative agreement following the death of his mother in 1973. Under that agreement, the plaintiff would use his discretion over the assets that he and C had inherited from their mother to cooperate with M and H, who had been disinherited, in order to bring the family closer together. The assets included properties located at Haverhill Road and Partridge Lane in Trumbull. After their mother's death, M and A moved into Haverhill Road with C, who could not live alone, while the plaintiff went away to college. Over the course of several decades, the parties continued to assist each other financially and otherwise. In 2005, the plaintiff sold Haverhill Road to M and A for $183,100, which was $250,000 less than the fair market value of the property, to help finance a project at Partridge Lane. The parties allegedly had decided to build a house on the Partridge Lane property as the first step in their overall family plan to develop their various properties. In his second amended complaint, the plaintiff alleged, inter alia, that M and A owed him the $250,000 difference between the sale price and the fair market value of Haverhill Road, on the basis of the family cooperative agreement, under the theories of breach of contract and unjust enrichment. The trial court rejected the plaintiff's breach of contract claim, concluding that the plaintiff had failed to prove the existence of the family cooperative agreement. The court found for the plaintiff and C on the plaintiff's unjust enrichment claim against M and A, concluding that the sale of Haverhill Road for less than fair market value was part of a separate family agreement to develop property in Newtown that the parties had inherited from an uncle. The court concluded that the $250,000 that the plaintiff and C had lost on the sale of Haverhill Road had unjustly enriched M and A. The trial court rejected the plaintiff's remaining claims. Thereafter, M and A appealed to this court and the plaintiff cross appealed from the trial court's judgment. *Held*:

1. The trial court erred in rendering judgment for the plaintiff and C on the plaintiff's unjust enrichment claim, the court's conclusion having been based on a wholly unalleged agreement between the parties: although the trial court concluded that the plaintiff was entitled to recover on his unjust enrichment claim because the transfer of the Haverhill Road property was part of a separate family agreement to develop and sell the Newtown property, the plaintiff's complaint never mentioned any agreement linking the sale of Haverhill Road to the development of the Newtown property, and, in fact, it did not contain a single reference to the Newtown property; moreover, the manner in which the plaintiff pursued his unjust enrichment claim at trial and the evidence he presented in support of that claim did not overcome the deficiency in his pleading to provide M and A with sufficient notice of the basis of the court's award, as the plaintiff presented no evidence that he, M, and A had a separate understanding or expectation regarding Haverhill Road and the Newtown property that was not a part of the overall family cooperative agreement that the court found had not been proved; furthermore, this court's review of the plaintiff's posttrial briefs filed with the trial court reflect that the plaintiff never relied on a separate Haverhill Road/Newtown property agreement or understanding in support of his unjust enrichment claim and, instead, argued that any agreement regarding the Newtown property was part and parcel of the family cooperative agreement; accordingly, there was no basis to conclude that the 2005 contract regarding the sale of Haverhill Road did not fully address the transfer of that property to M and A.

2. The plaintiff's claim that the trial court erred in not finding that a confidential relationship existed between the parties, and that the defendants

breached their obligations created by that relationship, was not reviewable, the plaintiff having failed to brief the claim adequately: the plaintiff's brief before this court was confusing, repetitive, and disorganized, and provided minimal relevant citation to the record, almost no citation to applicable legal authorities, and no meaningful analysis for his claim.

Argued October 20, 2021—officially released March 29, 2022

*Procedural History*

Action to recover damages for, inter alia, unjust enrichment, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Michael Hartmere*, judge trial referee; judgment in part for the plaintiff, from which the defendants appealed and the plaintiff cross appealed. *Reversed in part*; *judgment directed*.

*Sabato P. Fiano*, with whom was *Marisa R. Pulla*, for the appellants-cross appellees (defendant Marcella Durden et al.).

*John Gleason*, self-represented, the appellee-cross appellant (plaintiff).

*Opinion*

BRIGHT, C. J. This case arises out of a dispute between siblings over the disposition of various parcels of real property they acquired from their mother and an uncle. The defendants, Marcella Durden and her husband, Andrew Durden, appeal from the judgment of the trial court finding in favor of the plaintiff, John Gleason, Marcella's brother, on his unjust enrichment claim as to a property the defendants acquired from the plaintiff and another brother, Charles Gleason.[1] Specifically, the defendants claim that the court erred in rendering judgment for the plaintiff on his unjust enrichment claim because (1) the claim was time barred, (2) the court expressly found that the defendants never engaged in unjust or inequitable conduct, and (3) the agreement upon which the court based its judgment was not sufficiently definitive to support a claim of unjust enrichment and was never alleged in the plaintiff's complaint as a basis for recovery. The defendants further claim that the court erred in rendering judgment for Charles on the plaintiff's unjust enrichment claim because Charles was never an adverse party to the defendants and never asserted such a claim against them. With respect to the defendants' appeal, we reverse the judgment of the court.

The plaintiff cross appeals from the judgment of the court rendered in favor of the defendants on the plaintiff's remaining claims. Although the plaintiff's claim on his cross appeal is not entirely clear, he essentially argues that the court should have found that the defendants breached their obligations created by a "confidential relationship" that existed between the parties, awarded him additional damages arising from that breach, and ordered an accounting between the parties. As to the plaintiff's cross appeal, we affirm the court's judgment.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. Stephanie Gleason was the mother of the plaintiff, Charles Gleason, Marcella Durden, and Howard Gleason. During her lifetime, Stephanie owned six parcels of real estate: (1) 22 Haverhill Road in Trumbull (Haverhill Road), (2) 21 Reading Road in Trumbull (Reading Road), (3) 52 Partridge Lane in Trumbull (Partridge Lane), (4) 15 Clifton Place in Bridgeport, (5) 15 Dayton Road in Bridgeport, and (6) 7000 Bear Claw Loop in New Port Richey, Florida.[2] From 1971 until her death, Stephanie resided with the plaintiff and Charles at Haverhill Road.[3] On March 14, 1973, Stephanie passed away. Prior to her death, Stephanie quitclaimed all of her properties, except Partridge Lane, to the plaintiff and Charles in equal shares. After her death, the Partridge Lane property was administered through her estate and transferred to the plaintiff, Howard, and Charles, pursuant to the terms of her will. Stephanie

entirely disinherited Marcella from her estate. Nevertheless, her children had always had a close relationship and, following Stephanie's death, helped each other with a variety of personal and financial matters although "there was no written or oral agreement among them as to how all of the benefits received and advances made to each other were to be reconciled."

Shortly after Stephanie died, the plaintiff moved out of Haverhill Road to attend college at the University of Connecticut in Storrs. Consequently, the defendants moved into Haverhill Road with Charles.[4] From 1973 until 1985, the defendants and their children resided at Haverhill Road with Charles. In 1985, Charles, finding Haverhill Road too crowded and noisy, moved to a nearby apartment where he lived with a roommate before later moving into a condominium with his partner. The defendants and their children continued living at Haverhill Road. From April, 1973, to June, 2005, although the defendants were not the owners of Haverhill Road, they did not pay rent to the plaintiff and Charles for the use of the property. They did, however, pay the outstanding mortgage until it was paid in full in 1992, and paid all real estate taxes, insurance, and maintenance costs associated with the property. The defendants' occupancy of Haverhill Road also benefitted Marcella's siblings because they lived for a time with Charles, who could not live alone.

In 1988, the plaintiff facilitated the purchase of a condominium for Charles and made all mortgage, real estate tax, insurance and condominium association payments related to the condominium from August, 1989, to November, 2017. Marcella contributed $18,000 toward the purchase of the condominium and made credit card payments for Charles and paid for his health insurance from 1990 to 1993 after Charles was laid off from his job.

In 1989, an uncle of the four siblings passed away, leaving the plaintiff, Marcella, Charles, Howard, and one cousin property at 10 and 15 Old Town Road in Newtown (Newtown property). That property consisted of approximately thirty-five to forty acres with two rental units that the defendants agreed to manage. After inheriting the Newtown property, members of the family met with attorneys, engineers, surveyors, and consultants to discuss how they could further develop the property. As of 2016, however, almost nothing had been done to develop it.

From 1973 to 2007, the plaintiff mostly remained out of state, first in Boston and then in Rome, New York. In the mid-2000s, the plaintiff, the defendants, and Howard decided to build a house on the Partridge Lane property "as the first step in a family plan to develop the Newtown property." The plan was that the defendants' son, Daniel, would design and customize the house and eventually purchase it. Although the house was built to Dan-

iel's specifications, he did not purchase it. Instead, the plaintiff and his wife moved into the new residence at Partridge Lane and lived there from January, 2007, to January, 2016.

To help finance the Partridge Lane project, the plaintiff offered to sell Haverhill Road to the defendants for $183,100. That sale price was $250,000 less than the fair market value of the property, which had been appraised for $433,100 in 2005. At trial, the plaintiff testified that he came up with the $183,100 sale price entirely on his own and that the price was "a back of the envelope calculation" as to how much the defendants could afford. It was uncontested by the parties that the defendants did not request, negotiate, or induce that sale price. In 2005, the parties finalized the transfer of Haverhill Road for the agreed upon price of $183,100.[5]

In 2011, while residing at Partridge Lane, the plaintiff ran into financial difficulties, and the defendants began loaning him money. In November, 2012, the defendants requested an acknowledgement of the total amount that the plaintiff had received from them. The plaintiff provided a signed debt acknowledgement form in the amount of $126,000, payable on demand. The plaintiff also promised to repay the defendants in full after he sold Partridge Lane. Thereafter, the defendants continued loaning the plaintiff money, eventually providing him with a total sum of $202,690. Partridge Lane sold in January, 2016, but the plaintiff did not repay the defendants at that time.

On January 20, 2016, a family meeting took place. At the meeting, the defendants demanded that the plaintiff repay the $202,690 they had loaned him. Howard, who also had loaned the plaintiff money for the Partridge Lane project, also demanded that his loan be repaid. The plaintiff responded to the defendants' request by demanding that the defendants pay him the $250,000 that they still purportedly owed from their purchase of Haverhill Road. The plaintiff responded to Howard's request by demanding that Howard repay him for the fair market value of Reading Road, which the plaintiff had transferred to Howard decades earlier. The defendants and Howard refused to make any payments to the plaintiff, and then commenced separate legal actions against him.

On February 2, 2017, the defendants instituted a lawsuit by way of a six count complaint against the plaintiff and his wife, alleging breach of contract, unjust enrichment, tortious interference, and three counts of fraudulent transfer. Howard, also on February 2, 2017, similarly seeking repayment of amounts he claimed were owed to him, instituted a separate lawsuit against the plaintiff and his wife, alleging the same claims. The plaintiff filed separate answers and special defenses in both actions.

On July 13, 2017, the plaintiff commenced the underlying action against the defendants and Howard, and later cited in Charles as an additional party. The operative second amended complaint included ten counts: (1) breach of contract, (2) unjust enrichment, (3) constructive trust/confidential relationship, (4) breach of fiduciary duty, (5) fraudulent misrepresentation, (6) constructive trust/fraud, (7) promissory estoppel, (8) conversion, (9) equitable accounting, and (10) negligent infliction of emotional distress. Counts one through eight and count ten of the second amended complaint were directed at the defendants and Howard, whereas count nine sought an "equitable accounting of all accounts between the parties," presumably including Charles. Furthermore, the counts of the plaintiff's complaint directed at the defendants and Howard also alleged that they breached various duties and obligations to Charles, even though Charles had been named only as a defendant in the action and the plaintiff's prayer for relief did not seek any relief on behalf of Charles. Central to all of the plaintiff's claims against the defendants and Howard were the following allegations:

(1) following Stephanie's death, the plaintiff called a family meeting at which he told the defendants and Howard that, although almost all of Stephanie's assets had been bequeathed to him and Charles, "he would use some discretion over use of the assets . . . provided that everyone follows [Stephanie's] ultimate instruction which was that the assets would provide [the plaintiff] and Charles with lifelong financial stability and support, thereby creating by oral agreement a confidential fiduciary relationship on the defendants [and Howard] to [the plaintiff] and Charles";

(2) during the family meeting, the plaintiff stated that he was willing to use his discretion over the assets to bring the family closer together "with the express understanding and agreement" that any cooperative use of the assets "was subject to [the plaintiff] and Charles' paramount right to assets as they deemed necessary to ensure for their lifelong financial stability and support";

(3) in reliance on this understanding, the plaintiff and Charles transferred, for less than fair market value, Haverhill Road to the defendants and Reading Road to Howard; and

(4) despite accepting these properties pursuant to the understanding that they were required to participate in other family transactions as requested by the plaintiff, the defendants and Howard failed to meet their obligations, including returning to the plaintiff and Charles Haverhill Road and Reading Road or failing to pay the full value for said properties when demanded to do so.

The defendants and Howard filed answers denying these allegations and asserting several special defenses.[6] All three lawsuits were consolidated for trial.

During October and November, 2018, the trial court held a six day bench trial. Thereafter, the court issued its memorandum of decision. In the defendants' action against the plaintiff, the court rendered judgment for the defendants in the amount of $202,690 on their breach of contract claim, after finding that the plaintiff violated his agreement to repay the money that the defendants had loaned him. The court found for the plaintiff on the remaining five counts of the defendants' complaint. In Howard's action, the court rendered judgment for the plaintiff on all counts. Finally, in the plaintiff's action against the defendants, Howard, and Charles, the court rendered judgment for the plaintiff and Charles in the amount of $250,000 on the plaintiff's unjust enrichment claim against the defendants. Specifically, the court found that the plaintiff and Charles had "conferred a benefit of $250,000 on [the defendants] by the sale of their Haverhill Road property for far less than the market value to their detriment." The court further found that the sale of Haverhill Road to the defendants "was part of the family agreement to develop the Newtown property . . . ."

As to its judgment in favor of Charles and against the defendants, despite the fact that he had asserted no claims against the defendants, the court explained:

"Charles Gleason was made a party defendant to this action by [the plaintiff] pursuant to [General Statutes §§] 52-101 and 52-102, so that his rights could be adjudicated. After he failed to appear and failed to plead to the complaint, a motion for default as to Charles was granted. After the trial had begun [however], Charles did file an appearance and an answer to the complaint with the help of Daniel Durden, [the defendants'] son. Also, Charles was called as a witness and testified during the trial. Unjust enrichment means that it is contrary to equity and good conscience for the defendants to retain a benefit that has come to them at the expense of the plaintiff. Unjust enrichment, consistent with the principles of equity, is a broad and flexible remedy. . . . This court will determine the rights of Charles in this matter.

"When a court has assumed equitable jurisdiction over a matter, the doctrine of retaining jurisdiction in order to completely adjust the controversy extends to the granting of relief to a defendant or between codefendants. On this ground [a] defendant may have relief to which he shows himself entitled against [a] plaintiff, although he does not ask for it, and even in some cases where [a] plaintiff has failed to make out his own case. . . . This court does have jurisdiction in this equitable matter to grant relief to Charles . . . ." (Citations omitted; internal quotation marks omitted.)

As to the remaining nine counts, the court rendered judgment for the defendants. The court also rendered judgment for Howard on all ten counts of the plaintiff's

complaint.

The defendants appealed. Thereafter, the plaintiff filed a cross appeal.[7] Additional facts and procedural history will be set forth below as necessary.

I

The defendants claim that the court improperly concluded that the plaintiff and Charles were entitled to unjust enrichment damages from the defendants with respect to their purchase of Haverhill Road because (1) the plaintiff's unjust enrichment action was untimely, (2) although the defendants were enriched by the purchase, the enrichment was not unjust, (3) the agreement upon which the court based its judgment was not a definitive agreement and was never alleged in the plaintiff's complaint as a basis for recovery, and (4) with respect to Charles, that he was never an adverse party to the defendants, had asserted no claims against the defendants, and thus could not be awarded damages by the court. We conclude that the defendants' third claim is dispositive and are persuaded that the court erred when it rendered judgment for the plaintiff and Charles on the unjust enrichment claim.[8]

We first set forth the standard of review and applicable law. Determining whether the equitable doctrine of unjust enrichment applies in a given case "requires a factual examination of the particular circumstances and conduct of the parties. . . . The factual findings of a trial court must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . When a trial court's legal conclusions are challenged, however, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *David M. Somers & Associates*, *P.C.* v. *Busch*, 283 Conn. 396, 407, 927 A.2d 832 (2007).

The doctrine of unjust enrichment "is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated." (Internal quotation marks omitted.) *Gibson* v. *Jefferson Woods Community, Inc.*, 206 Conn. App. 303, 314, 260 A.3d 1244, cert. denied, 339 Conn. 911, 261 A.3d 747 (2021). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this

standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy." (Internal quotation marks omitted.) *Hospital of Central Connecticut* v. *Neurosurgical Associates, P.C.*, 139 Conn. App. 778, 784, 57 A.3d 794 (2012).

Unjust enrichment is a "*noncontractual* means of recovery in restitution." (Emphasis added; internal quotation marks omitted.) *Professional Electrical Contractors of Connecticut, Inc.* v. *Stamford Hospital*, 196 Conn. App. 430, 438, 230 A.3d 773 (2020); see also *Hospital of Central Connecticut* v. *Neurosurgical Associates, P.C.*, supra, 139 Conn. App. 784 ("[u]njust enrichment applies wherever justice requires compensation to be given for property or services rendered . . . and *no remedy is available by an action on the contract*" (emphasis added)). In other words, unjust enrichment is not available as a remedy when there is a valid contract between the parties and that contract addresses the matter at issue in the unjust enrichment action. See *Connecticut Light & Power Co.* v. *Proctor*, 158 Conn. App. 248, 251 n.7, 118 A.3d 702 (2015) ("[a] court . . . cannot grant relief on a theory of unjust enrichment unless the court first finds that there was no contract between the parties"), aff'd, 324 Conn. 245, 152 A.3d 470 (2016). "Nevertheless, when an express contract *does not fully address a subject*, a court of equity may impose a remedy to further the ends of justice." (Emphasis added; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 455, 970 A.2d 592 (2009).

The plaintiff's unjust enrichment claim against the defendants concerns solely the sale of Haverhill Road. It is undisputed, however, that the plaintiff and the defendants had a valid oral agreement as to the transfer of that property. Consistent with their testimony at trial, both parties acknowledged during oral argument before this court that they had agreed that the plaintiff would sell the property to the defendants for $183,100, even though its fair market value was $433,100. The parties' agreement to transfer Haverhill Road was, undeniably, a contract; see *Boland* v. *Catalano*, 202 Conn. 333, 338–39, 521 A.2d 142 (1987) ("[a] contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty" (internal quotation marks omitted)); and that contract addressed the obligations of the parties with regard to the sale. Accordingly, because there was a contract between the plaintiff and the defendants regarding the sale of Haverhill Road, the doctrine of unjust enrichment does not apply unless the contract did not fully address the subject at issue. See *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 455–56.

On appeal, the plaintiff does not claim that there was not a valid agreement as to the sale of Haverhill Road.

Instead, the plaintiff argues that the agreement for the sale of Haverhill Road for $183,100 did not fully address the subject at issue because there was a collateral agreement in place that further addressed the defendants' payment obligations for the property. According to the plaintiff, the parties had a separate agreement concerning the development of the Newtown property and, under that agreement, the defendants were required to pay the $250,000 difference between the sale price and the fair market value of Haverhill Road after the Newtown property had been developed and sold. The court found that this separate agreement existed, and, on that basis, concluded that the sale of Haverhill Road was part of the family agreement to develop the Newtown property and, as such, that the $250,000 that the plaintiff and Charles had lost on the sale of Haverhill Road had unjustly enriched the defendants.

The defendants claim that, in relying on the purported separate agreement regarding Haverhill Road and the Newtown property, the court "adopted an unalleged, narrower subsection of [the family cooperative agreement] which was no more definitive in its essential terms than the alleged 'family cooperative agreement' that the trial court rejected." They note that "[*c*]*onspicuously absent from all three* [*versions of the plaintiff's*] *complaints is any mention whatsoever of the Newtown property.*" (Emphasis in original.) The defendants further argue that the plaintiff presented no evidence as to the terms of this separate agreement or that the defendants in any way breached it. In sum, the defendants claim that the court improperly based its unjust enrichment judgment in favor of the plaintiff and Charles on an unpleaded and unproven agreement. We agree.

"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [his] complaint." (Internal quotation marks omitted.) *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 417, 676 A.2d 405 (1996). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A complaint should fairly put the defendant on notice of the claims against him. . . . Thus, a plaintiff during trial cannot vary the factual aspect of his case in such a way that it alters the basic nature of the cause of action alleged in his complaint. . . . In other words, [a] plaintiff may not allege one cause of action and recover upon another. . . .

"The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it pro-

ceeded, and do substantial justice between the parties.
. . . As long as the pleadings provide sufficient notice
of the facts claimed and the issues to be tried and do
not surprise or prejudice the opposing party, we will
not conclude that the complaint is insufficient to allow
recovery. . . . Whether a complaint gives sufficient
notice is determined in each case with reference to the
character of the wrong complained of and the underly-
ing purpose of the rule which is to prevent surprise upon
the defendant." (Citations omitted; internal quotation
marks omitted.) *Oxford House at Yale* v. *Gilligan*, 125
Conn. App. 464, 469–70, 10 A.3d 52 (2010). "The interpre-
tation of pleadings presents a question of law over
which our review is plenary." *Landry* v. *Spitz*, 102
Conn. App. 34, 41, 925 A.2d 334 (2007).

In addition, "in the context of a postjudgment appeal,
if a review of the record demonstrates that an unpleaded
cause of action actually was litigated at trial without
objection such that the opposing party cannot claim
surprise or prejudice, the judgment will not be disturbed
on the basis of a pleading irregularity. . . . In that cir-
cumstance, provided the plaintiff has produced suffi-
cient evidence to prove the elements of his unpleaded
claim, the defendant will be deemed to have waived
any defects in notice." (Citation omitted.) Id., 43–44.
Put another way, a court may not render a judgment
for a plaintiff on a theory that is neither pleaded nor
pursued by the plaintiff at trial.

In determining whether the court's unjust enrichment
judgment was based on a claim that the plaintiff did not
plead or pursue at trial, we begin with the allegations
of the operative complaint. Count two of the plaintiff's
second amended complaint, which sets forth the plain-
tiff's unjust enrichment claim, incorporates by refer-
ence paragraphs 1 through 22 of count one, which sets
forth the plaintiff's breach of contract claim. Relevant
to his unjust enrichment claim, the plaintiff alleged:

"10. On March 17, 1973, the day of his mother's
funeral, [the plaintiff] called a family meeting (the 'Fam-
ily Meeting') attended by Charles and the defendants
at which time [the plaintiff] confirmed what everyone
at the meeting had been told numerous times by [Steph-
anie]: that due to the animosity between [Stephanie]
and the defendants that they had been disinherited from
[Stephanie's] estate and that [the plaintiff] and . . .
Charles were the sole beneficiaries.

"11. During the aforementioned Family Meeting, [the
plaintiff] further advised that [Stephanie] had instructed
him on numerous occasions prior to her death that the
assets of her estate which would be bequeathed to him
and Charles were to be utilized to provide for their
lifelong financial stability and support, and [the plain-
tiff] agreed to comply with her wishes.

"12. During the aforementioned Family Meeting, [the

plaintiff] further advised that he would use some discretion over use of the assets of [Stephanie's] estate; provided that everyone follow her ultimate instruction which was that the assets would provide [the plaintiff] and Charles with lifelong financial stability and support, thereby creating by oral agreement a confidential fiduciary relationship on the defendants to [the plaintiff] and Charles.

"13. During the aforementioned Family Meeting, [the plaintiff] indicated that he was willing to use discretion to cooperate with his disinherited siblings in order to bring the family closer together and with the express understanding and agreement by and between [the plaintiff] and Charles and the defendants that any such cooperative arrangements would at all times be subject to [the plaintiff] and Charles' paramount right to assets as they deemed necessary to ensure for their lifelong financial stability and support (hereinafter referred to as the 'Family Cooperative Agreement').

"14. Among the assets of [Stephanie's] estate were real property located at . . . Reading Road . . . and . . . Haverhill Road . . . ."

The incorporated paragraphs of count one also alleged that, "[i]n reliance on the Family Cooperative Agreement," the plaintiff and Charles were, in relevant part, induced by the defendants to engage in two transactions, which the complaint describes as part of the "Family Cooperative Transactions": (1) granting the defendants "the right to occupy Haverhill Road for minimal and inadequate consideration in light of the fair market value of said right" and (2) conveying Haverhill Road to the defendants again for minimal and inadequate consideration in light of the property's fair market value. Further, the complaint alleged that despite these transactions, the defendants had failed to pay (1) the fair market value of their occupancy of Haverhill Road prior to the conveyance of that property to them and (2) the fair market value of the Haverhill Road property. Other than incorporating the allegations from count one, in count two the plaintiff alleged only that he and Charles "conferred significant benefits upon the defendants pursuant to the Family Cooperative Transactions," the defendants did not pay for those benefits and were unjustly enriched to the detriment of the plaintiff and Charles, and the plaintiff claimed money damages.

The court, in rejecting the plaintiff's breach of contract claim in count one, concluded that the plaintiff had failed to prove the existence of the Family Cooperative Agreement on which both that claim and the unjust enrichment claim were based. In particular, the court held that "the alleged 'family cooperative agreement' which frequently was characterized by 'we'll figure it out later' was not definite and certain as to its essential terms and requirements of the parties. Although both

Marcella and [the plaintiff] kept fairly extensive records, the plaintiff did not prove that there was one overall 'family cooperative agreement' which encompassed all of the family transactions or interactions, e.g., rent or equivalent value to be paid at some future time by Marcella and Andrew for living at 22 [Haverhill] Road with Charles, or fair market value for occupancy rights to be paid by Howard for living at Reading Road."

Nevertheless, as noted previously in this opinion, the court, in rendering judgment on count two, concluded that the plaintiff and Charles were entitled to recover on the unjust enrichment claim because the transfer of Haverhill Road was part of a separate family agreement to develop and sell the Newtown property. The problem with such a conclusion is that the complaint never mentioned any agreement linking the sale of Haverhill Road to the defendants to the development of the Newtown property. In fact, the complaint does not contain a single reference to the Newtown property. Consequently, on the basis of our thorough review of the operative complaint, we agree with the defendants that the court's judgment in favor of the plaintiff on count two was based on a wholly unalleged agreement.

We next turn to the manner in which the plaintiff pursued his unjust enrichment claim at trial and the evidence he presented in support of that claim to determine whether the defendants had sufficient notice of the basis of the court's award and whether the plaintiff, through his presentation of his unjust enrichment claim, overcame the deficiency in his pleading. Although the plaintiff testified at trial that the $250,000 difference between what the defendants paid for Haverhill Road and its fair market value "was to be resolved once the development of Newtown took place," he repeatedly testified that this anticipated reckoning was part of the overall family agreement "to figure it out later."

Furthermore, the plaintiff testified that the development of the Newtown property would trigger a reconciliation of all obligations the siblings had to each other in what he described as "the grand accounting of who owes who for what that we had established since the beginning," including his claim that Howard owed him money from the transfer of Reading Road, his claim that the defendants owed him and Charles rent for Haverhill Road, and the defendants' claim that the plaintiff owed them money. He also testified that the agreement that is the basis for his claim had been in place between the parties for at least forty-five years, which would predate by thirty years the defendants' purchase of Haverhill Road. Consequently, the plaintiff's testimony could be referring only to the alleged Family Cooperative Agreement and not a separate Haverhill Road/Newtown property agreement or understanding. Overall, the plaintiff presented no evidence that he and the defendants had a separate understanding or expec-

tation regarding Haverhill Road and the Newtown property that was not part of the overall "we'll figure it out later" Family Cooperative Agreement that the court found had not been proved.

In addition, we agree with the defendants that the plaintiff failed to present evidence of the specific terms of any such agreement. In particular, he provided no evidence of any understanding among the parties of what would constitute the completion of the development of the Newtown property necessary to trigger "the grand accounting." Nor did the plaintiff present any evidence of how the defendants acted inconsistently with any plan to develop the Newtown property, which is still to be developed.

Finally, our review of the plaintiff's posttrial briefs filed in the court reflect that the plaintiff never relied on a separate Haverhill Road/Newtown property agreement or understanding in support of his unjust enrichment claim. In his initial posttrial brief, the plaintiff based his unjust enrichment claim on the "long-term family agreement." Consistent with his testimony, the plaintiff argued that this family agreement was entered into shortly after Stephanie's death in 1973. Other than arguing that, as part of the long-term family agreement, the plaintiff sold Haverhill Road to the defendants and Reading Road to Howard for less than their fair market values to raise money to develop Partridge Lane, which was to be sold to develop the Newtown property, the plaintiff's initial posttrial brief makes little or no reference to the Newtown property. It does not suggest that there was a separate understanding that the defendants would pay the plaintiff and Charles an additional $250,000 upon the development of the Newtown property, describe what constituted completion of such development, or claim that the defendants have refused to participate in such development.

Similarly, in his posttrial reply brief, the plaintiff argued that his unjust enrichment claim was based on the family's decades old agreement to "figure it out later." The plaintiff also argued that the development of the Newtown property was part of this decades old agreement and the "overall family plan to develop properties." The brief does not discuss a separate Haverhill Road/Newtown property agreement as found by the court. Instead, the plaintiff argued: "The second amended complaint discusses the transactions of the family as a whole, not exclusively in regards to the properties inherited by [the plaintiff] and Charles from their mother Stephanie. All parties since 1970 were well aware of their likely inheritance of the Newtown property. At the time of discovery, and in depositions, and throughout these proceedings, the Newtown [property was] exhaustively discussed and vast evidence has been accepted by the court as to this issue."

Thus, the plaintiff argued that any agreement regard-

ing the Newtown property was part and parcel of the agreement alleged in count one of his complaint, which the court found had not been proven. The plaintiff simply never pleaded, presented evidence of, or argued to the court that he was entitled to succeed on his unjust enrichment claim based on a separate amorphous agreement or understanding linking payment of additional money to him and Charles for the purchase of Haverhill Road to the undefined "development" of the Newtown property.

Given how the plaintiff pleaded and litigated his claims, we conclude that it was improper for the court to hold that the plaintiff had failed to prove the agreement that was the basis of his unjust enrichment claim and then rely on a purported separate agreement that was never alleged, never proven, and never argued when it rendered judgment for the plaintiff. Without the purported agreement regarding the Newtown property, and the court having rejected the plaintiff's claim of a family cooperative agreement to "figure it out later," there is no basis to conclude that the 2005 agreement regarding the sale of Haverhill Road did not fully address the transfer of that property to the defendants. Consequently, the plaintiff cannot prevail on his unjust enrichment claim and the court erred when it rendered judgment for the plaintiff on the second count of his second amended complaint.[9]

## II

As best we can divine, after a thorough review of the cross appeal, it appears that the plaintiff raises a single claim: that the court erred in not finding that a confidential relationship existed between the parties. As part of that overarching claim, the plaintiff also argues that the court erred in rendering judgment for Howard[10] and in not ordering an equitable accounting. We conclude that this claim is inadequately briefed and, thus, decline to address it.[11]

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized. . . .

"We are mindful that [i]t is the established policy of the Connecticut courts to be solicitous of [self-repre-

sented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803–804, 256 A.3d 655 (2021).

For his single claim on his cross appeal, the plaintiff provides minimal relevant citation to the record and almost no citation to applicable legal authorities. See id., 804 (brief containing only minimal citation to record was inadequate); see also *Mattie & O'Brien Contracting Co.* v. *Rizzo Construction Pool Co.*, 128 Conn. App. 537, 544, 17 A.3d 1083 (brief containing minimal citation to legal authority was inadequate), cert. denied, 302 Conn. 906, 23 A.3d 1247 (2011). Further, the plaintiff provides no meaningful analysis for his claim. See *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 748, 183 A.3d 611 (2018) (actual analysis, not just mere abstract assertions, is required for briefing to be adequate). Last, the plaintiff's briefing is confusing, repetitive, and disorganized. See *State* v. *Buhl*, 321 Conn. 688, 722–23, 138 A.3d 868 (2016) (no abuse of discretion in declining to review defendant's claims when briefing was repetitive and confusing). Accordingly, his claim is inadequately briefed, and we decline to review it.

The judgment is reversed with respect to the unjust enrichment claim in count two rendered in favor of the plaintiff and Charles Gleason, and the case is remanded with direction to render judgment for the defendants on that count; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Two other parties, Charles Gleason and Howard Gleason, were named as defendants in the plaintiff's second amended complaint. Neither Charles nor Howard, however, participated in this appeal. Accordingly, hereinafter, all references to the defendants are to Marcella Durden and Andrew Durden.

[2] Of these six properties, only Haverhill Road and Bear Claw Loop had dwellings. The other properties were all vacant lots.

[3] Howard and Marcella also previously lived with their mother at Haverhill Road, but moved into their own homes in 1970 and 1971, respectively.

[4] As all the parties so testified, Charles suffers from certain significant mental and/or physical conditions and is unable to live on his own.

[5] According to Marcella's testimony, the $250,000 difference between the fair market value and the sale price was a gift from the plaintiff. The plaintiff, however, testified that under the terms of a family cooperative agreement that dated back to Stephanie's death, the defendants were required to pay the remaining $250,000 after the Newtown property had been developed. It appears that the court did not credit the testimony of either the plaintiff or Marcella. The court found that the $250,000 that the plaintiff and Charles "lost" on the sale of Haverhill Road to the defendants "was not a gift." The court also found that the plaintiff had failed to prove that there was a separate "overall 'family cooperative agreement' which encompassed all of the family transactions or interactions, e.g., rent or equivalent value to be paid at some future time by [the defendants] for living at 22 [Haverhill] Road with Charles . . . ."

[6] Prior to the start of the trial, Charles had not filed an appearance or an

answer. Accordingly, the plaintiff moved that a default judgment be entered against Charles, and the court granted that motion. Subsequently, after trial had commenced, he belatedly filed an appearance and an answer. It appears, however, that the court never vacated the default judgment against Charles.

[7] The only judgment on appeal before this court is the judgment in the plaintiff's action against the defendants. Howard appealed from the judgment in his case against the plaintiff, but that appeal was dismissed by this court for lack of a final judgment. The defendants also appealed from the judgments rendered for the plaintiff in their action against the plaintiff, and the plaintiff cross appealed from the judgment against him in that action, but we also dismissed both the appeal and the cross appeal in that matter for lack of a final judgment. Last, the plaintiff appealed from the judgment rendered for the defendants in their action against him, but we dismissed that appeal after the plaintiff failed to timely file the required documents.

[8] Because we agree with the defendants' third claim and resolve this appeal on those grounds, we need not reach their other claims.

[9] As noted previously in this opinion, the court also rendered judgment for Charles on count two of the plaintiff's second amended complaint. Our conclusion that the plaintiff cannot succeed on his unjust enrichment claim, applies with equal, if not more, force to the court's judgment in favor of Charles. Charles made no claim based on the purported agreement regarding Haverhill Road and the Newtown property. Thus, the deficiencies that undermine the court's judgment in favor of the plaintiff also undermine the court's judgment as to Charles. Furthermore, Charles was not an adverse party to the defendants, given that he never made any claims against or requested any relief from the defendants. A court cannot award damages to someone who is not seeking them. We recognize that in *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 784 A.2d 905, cert. denied, 258 Conn. 946, 788 A.2d 95 (2001), and cert. denied, 258 Conn. 947, 788 A.2d 95 (2001), and cert. denied sub nom. *Vernon Village, Inc.* v. *Giulietti*, 258 Conn. 947, 788 A.2d 97 (2001), and cert. denied sub nom. *Giulietti* v. *Vernon Village, Inc.*, 258 Conn. 947, 788 A.2d 96 (2001), on which the trial court relied, this court held that, under the doctrine of retaining jurisdiction, "[a] defendant may have relief to which he shows himself entitled against [a] plaintiff, although he does not ask for it, and even in some cases where [a] plaintiff has failed to make out his own case." (Internal quotation marks omitted.) Id., 858. In *Giulietti*, the named defendant who was granted relief by the court "made it clear that although she was named as a defendant, her interests in the matter were aligned with those of the plaintiffs," not the defendants. Id., 857–58. In the present case, Charles never said that he was seeking relief at all or that his interests in the action were more aligned with the interests of the plaintiff. To the contrary, Charles largely declined to participate in the underlying litigation at all. Accordingly, there was no actual controversy to adjudicate between Charles and the defendants, and the court thus erred in awarding Charles damages on the plaintiff's unjust enrichment claim for that reason as well. See *Board of Education* v. *Naugatuck*, 257 Conn. 409, 416, 778 A.2d 862 (2001) (actual controversy must exist at all times for justiciability of claim).

[10] The defendants contend that the plaintiff should not be allowed to assert claims of error against Howard in his cross appeal because Howard did not participate in this appeal. We disagree. In *Wickes Mfg. Co.* v. *Currier Electric Co.*, 25 Conn. App. 751, 754 n.3, 596 A.2d 1331 (1991), this court held that a plaintiff may properly cross appeal as to a defendant who did not appeal: "Where only one judgment exists from which an appeal could be taken, a cross appeal may properly be filed by an aggrieved appellee. This rationale also applies when a defendant appeals and a plaintiff cross appeals as to defendants who did not appeal . . . ." Accordingly, the plaintiff is permitted to challenge through his cross appeal the judgment rendered in favor of Howard, even though Howard did not participate in the appeal. That being said, for reasons explained herein, we decline to reach the merits of the plaintiff's argument that the trial court erred in rendering judgment for Howard.

[11] The plaintiff also argues in his cross appeal that the defendants failed to comply with Practice Book § 62-7 (b) (1) because they never certified that a copy of their briefs and other appellate papers were delivered to Charles. We conclude that this issue is moot and, thus, unreviewable. On May 10, 2021, the plaintiff filed a motion for sanctions before this court, arguing that the defendants had repeatedly failed to certify delivery of their briefs and appellate filings to Charles. This court denied that motion, but ordered the defendants to certify that "a copy of the defendants' briefs and

other appellate papers have been delivered to" Charles. On June 17, 2021, in accordance with that order, the defendants' counsel certified that the required documents had been delivered to Charles. The defendants' counsel also provided this court with a FedEx proof of delivery record for the delivery of those documents. Accordingly, this issue has been resolved and is thus moot. See *Curley* v. *Kaiser*, 112 Conn. App. 213, 229, 962 A.2d 167 (2009) (claim is moot when issue before court has been resolved).

We further note that, to the extent the plaintiff, as a self-represented party, seeks to represent Charles in his cross appeal, such representation is not allowed. Because the plaintiff is not an attorney, he cannot appear on behalf of Charles. See *Collard & Roe, P.C.* v. *Klein*, 87 Conn. App. 337, 343–44 n.3, 865 A.2d 500 ("[a] pro se party may not appear on behalf of another pro se party"), cert. denied, 274 Conn. 904, 876 A.2d 13 (2005). Moreover, contrary to the plaintiff's argument, this court's precedent in *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 784 A.2d 905, cert. denied, 258 Conn. 946, 788 A.2d 95 (2001), and cert. denied, 258 Conn. 947, 788 A.2d 95 (2001), and cert. denied sub nom. *Vernon Village, Inc.* v. *Giulietti*, 258 Conn. 947, 788 A.2d 97 (2001), and cert. denied sub nom. *Giulietti* v. *Vernon Village, Inc.*, 258 Conn. 947, 788 A.2d 96 (2001), does not give the plaintiff a right to assert Charles' legal rights in this action. Thus, the claims pertaining to Charles that were raised by the plaintiff on appeal are unreviewable by this court.

_____